COPY

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
LAWRENCE Y. ISER (SBN 094611)
 liser@kwikalaw.com
CHAD R. FITZGERALD (SBN 217551)
 cfitzgerald@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Plaintiff Roller Coaster Films, LLC

FILED
2010 MAR -1 PM 2:32
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ROLLER COASTER FILMS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>DOUGLAS BUSBY, an individual; and DAMASCUS FILMS, an unknown entity,<br><br>Defendants. | CASE NO. CV10 1508 CBM PLAx<br><br>**COMPLAINT FOR:**<br><br>(1) COPYRIGHT INFRINGEMENT;<br><br>(2) UNFAIR COMPETITION<br><br>(3) SPECIFIC RECOVERY OF PERSONAL PROPERTY<br><br>**DEMAND FOR TRIAL BY JURY** |

99911.00003/50529.1

COMPLAINT

Plaintiff Roller Coaster Films, LLC ("Plaintiff" or "RCF") alleges as follows:

## JURISDICTION AND VENUE

1. This action arises under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, California Code of Civil Procedure § 527.6, California Business and Professions Code §§ 17200 *et seq.*, and the common law of the State of California. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1338 and the principles of supplemental jurisdiction pursuant to § 1367(a).

2. Venue in this Judicial District is proper under 28 U.S.C. § 1391(b) in that (1) a defendant resides in this Judicial District and all defendants reside in California, (2) a substantial part of the events on which the claims are based occurred in this Judicial District, and (3) a substantial part of the property that is the subject of this action is located in this Judicial District.

## INTRODUCTION

3. This action seeks to enjoin egregious and blatant acts of copyright infringement. A film director, retained to help create a motion picture as a work for hire for another, has hijacked the film and is holding it for ransom according to his unreasonable, irrational, and unlawful whims and demands.

4. Plaintiff Roller Coaster Films, LLC ("RCF" or "Plaintiff") hired Defendant Douglas Busby to co-write and direct a documentary about Congolese warlord Laurent Nkunda (the "Film"). Pursuant to a written and executed agreement between the parties, RCF is the sole and exclusive owner of the Film as a work made for hire. 17 U.S.C. §§ 101, 201(b). Busby, however, has refused to turn the Film and its underlying materials over to RCF, despite his contractual obligation to do so, has already made copies of the Film and submitted it to various film festivals, has created a promotional poster advertising the Film, has destroyed RCF's film equipment, is threatening to imminently distribute and exploit the Film nation-wide, and is demanding that the parties' written and executed contract be thrown out and recreated, with vastly larger sums of money paid to him. Worst of

all, Busby has threatened RCF's principals (a husband and wife) with bodily harm and has attacked and injured the husband. His threats are so severe that RCF's principals have sought and obtained a restraining order against Busby in the Los Angeles County Superior Court enjoining Busby from personally harassing them.

## THE PARTIES

5. Plaintiff RCF is a limited liability company organized and existing under the laws of the State of California, with its principal place of business located in the Sate of California.

6. Plaintiff is informed and believes, and based thereon alleges, that Defendant Busby is a resident of the County of Los Angeles, State of California.

7. Plaintiff is informed and believes, and based thereon alleges, that Defendant Damascus Films is a legal entity of unknown type, which, as of the date of this Complaint, is not registered to do business in California as either a corporation or a limited liability company.

8. Plaintiff is informed and believes, and based thereon alleges, that at all relevant times each defendant was the agent, employee, representative, and/or co-conspirator of the other and in doing the acts herein alleged was acting in the course and scope of such agency, employment and co-conspiracy. Each defendant has ratified the conduct of his or its agents, employees and co-conspirators. Busby and Damascus Films are collectively referred to herein as "Defendants."

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### RCF Hires Busby to Direct the Film as a Work Made for Hire

9. In early 2008, RCF hired Busby as an independent contractor to serve as director, co-writer, and co-director of photography on the Film. RCF Member Tony Arbini served as executive producer, co-writer, and co-director of photography. From the outset of their working relationship, it was always understood and agreed that RCF would own all rights in and to the Film.

10. In March 2008, Busby and Arbini traveled to Africa for approximately

1  three weeks and shot much of the underlying footage for the Film. On April 20,
2  2008, Busby emailed Arbini a draft contract, entitled "Congo Documentary
3  Production Contract," to memorialize their agreement regarding the Film. The draft
4  contract stated that "[t]he Executive Producer [Arbini] expressly reserve[s] the
5  following rights: Ownership of the intellectual property rights" in and to the Film.
6  In this draft agreement, Busby sought 20% of the Film's net profits as compensation
7  for his work in connection with the Film. This draft agreement was never executed.

8    11.  On or about December 2, 2008, Arbini sent Busby an agreement
9  entitled "Consultant Agreement" memorializing the parties' agreement regarding the
10 Film. Among other provisions, the Consultant Agreement confirms the parties'
11 agreement that RCF is the sole owner of all rights in and to the Film and its
12 underlying materials. In a provision entitled "Ownership of Work Product," the
13 parties expressly agreed that

> [RCF] shall at all times be the sole and exclusive owner of both the physical embodiment and any intangible rights in and to all edits and work product (collectively, "Work Product") prepared by [Busby] in the performance of [Busby's] services under this Agreement (in all cases whether preliminary or final[)]. At any time during the course of this Agreement, at the conclusion of the work under this Agreement, or at the termination of this Agreement for any reason, [Busby] shall deliver any and all Work Product, to [RCF] at [RCF's] request regardless of the form such material is in at the time requested.

20  12.  Busby is entitled to 25% of the profits from the exploitation of the Film
21 under the Consultant Agreement (a 5% increase from the 20% he initially sought).
22 Busby is entitled to no other consideration under the terms of the Consulting
23 Agreement.

24  13.  On the same day (December 2, 2008), Busby and Arbini executed a
25 document entitled "Transmittal/Non Disclosure," pursuant to which RCF loaned
26 Busby an Iomega external hard drive, serial number 62A8360F8F, for use in
27 connection with the Film. (the "Hard Drive"). The Hard Drive contained the raw
28 footage of the Film shot in Africa. The Transmittal/Non Disclosure provides:

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

> The media content transferred to you is considered proprietary and of a sensitive nature. Its contents are considered as a working copy intended for your use on an at will basis. The property and the entirety of its contents are property of [RCF] and will be returned upon demand. Any modification, amendment or changes made to the content are also considered to be property of [RCF]. Upon receiving this material you agree to a Non Disclosure of its content inclusive of any future changes…. The contents and any changes to it are considered copyrighted by and for the sole privilege and use of [RCF].

14. On or about December 14, 2008, Busby confirmed his acceptance of the terms of the Consulting Agreement. The Consulting Agreement was executed by RCF and Busby on January 8, 2009.

**Despite the Parties' Agreement, Busby Begins Efforts to Control the Film and Distribute It as His Own**

15. Between August 2008 and November 2009, Busby and Arbini made four subsequent trips to Africa to shoot additional footage for the Film as well as for another RCF film project about Ugandan warlord Joseph Kony. During these trips, however, they were never able to actually meet with Kony.

16. During the first half of 2009, in between trips to Africa to film the Kony project, Busby and Arbini worked together to edit the raw footage they had compiled for the Film. By September 2009, however, their relationship began to sour as Busby grew unstable, hostile, and threatening toward Arbini. Nonetheless, Arbini continued to try to work productively with Busby in order to complete the Film.

17. In September 2009, Busby informed Arbini that, contrary to the Consulting Agreement and without Arbini's knowledge or authority, he had sent DVD copies of the (unfinished) Film to various distributors in order to seek their opinions on the Film. In addition, on September 22, 2009, Busby informed Arbini that he had submitted the Film to the Sundance Film Festival in Park City, Utah.

### Busby Grows Irrational and Hostile and Refuses to Turn Over the Film Pursuant to the Parties' Agreement

18.   In October 2009, Busby grew increasingly irrational and antagonistic. Whenever Arbini attempted to speak to him about the Film, he would become agitated and hostile. During this time, Busby sent Arbini numerous angry emails, text messages, and phone calls.

19.   On October 23, 2009, Arbini sent Busby a text message requesting that he immediately cease work on the Film since RCF had run out of funds to produce it. Busby replied in a text message that he would not stop work or turn over the Film: "Fuck you. Come on down and get it. Try and fuck with my career and hard work. … Hide behind all your lawyers and watch me finish this film and put it out. What are you gonna do sue me?  Come on over anytime you fuckin coward."

20.   Further in this text conversation, Busby confirmed his intent to keep the Film and distribute it on his own, in violation of the Consultant Agreement, threatening: "I'm working on it [the Film] right now. It's going in festi[v]als and i'm getting my 25 percent back. … [S]tay the fuck out of my way."

21.   That day (October 23, 2009), Arbini sent an email to Busby requesting, pursuant to the Transmittal/Non Disclosure, to retrieve the Hard Drive and all his files for the Film. Busby refused to turn over the Hard Drive and files.

22.   Around this time, Arbini became aware that Busby was abusing the prescription medication Xanax, which was contributing to Busby's irrationality and hostility. Arbini sent Busby an email raising the Xanax issue and suggesting that they mediate their disputes in order complete the Film. Busby responded with hostility and threats and asserted that he would "continue [working on the Film] till this film is finished and released. This is a damn good film and the world will see it. Period." Further in the email exchange, Busby told Arbini to "SHUT THE FUCK UP!" and made it clear that he intended to complete and distribute the Film on his own without RCF. He threatened Arbini that "[r]ight now you are definitely my

enemy. ... I'm finishing this film. ... If I want your opinion I will ask for it. No questions. ... If you bring [Xanax] up in a conversation I will walk away or use [your] imagination o[r] any other combination of results."

### Busby and Arbini Return to Africa, But Busby Becomes More Violent and Irrational, Attacking Arbini and Destroying RCF Property

23. Some time thereafter, Busby and Arbini met to discuss their issues regarding the Film. At this meeting, Busby admitted his Xanax abuse and stated that he was now sober, attending Alcoholics Anonymous meetings, and seeking therapy for addiction. Based on this meeting and the parties' mutual desire to complete the Joseph Kony project, Busby and Arbini agreed to travel to Africa again in the hopes of obtaining an interview with Kony.

24. Busby and Arbini traveled to Africa on or about November 5, 2009 to complete the Kony project. During this trip, Busby became so unstable, uncooperative, and violent that he was fired from the Kony project. Among other transgressions and violent behavior on this trip, Busby purchased and abused generic Xanax; attempted to purchase a handgun (which is illegal in Kenya); repeatedly threatened Arbini, their guide, and their crew with violence and death; refused to attend project meetings, including a meeting with their local contact who was coordinating the visit and helping gain access to Kony; physically attacked Arbini, injuring him; barricaded himself in his hotel room and set fire to RCF's main camera, damaging it and rendering it inoperable; set fire to his hotel room; and refused to depart when fired from the project and asked to leave. Busby had to be subdued by hotel security, placed in a taxi, taken to the airport, and guarded until he was placed on a flight home. As a result, on November 13, 2009, Audra Arbini sent Busby a letter by certified mail detailing these events and confirming his termination from the Kony project. Busby refused to acknowledge receipt of this letter.

99911.00003/50529.1                              6
                                        COMPLAINT

### Busby Makes It Clear That He Is Treating the Film as His Own and Planning to Copy and Distribute It

25.   Approximately one week later, on or about November 20, 2009, Busby tried to telephone Arbini. Arbini did not answer his calls but instead sent him an email asking him to refrain from contacting him and requesting that he return a small video camera belonging to RCF and that he provide Arbini with a copy of the Film. Busby replied that he was completing the Film without RCF's or Arbini's involvement, writing, "I'll give you a copy of the film when it's finished and we'll honor our contract. Don't contact me again. I'll contact you."

26.   In early December 2009, Busby emailed and texted Arbini requesting "peace." Arbini responded with steps necessary for "peace," including Busby repaying RCF for the damage he caused to RCF's equipment; immediately returning the Hard Drive and accompanying materials, destroying any other copies of the Film or hard drives containing the Film and materials, and turning over all his records, notes, and emails regarding the Film; and apologizing for his behavior in Africa. Arbini advised Busby to "not make any more business contacts, decisions, edits or changes regarding [the Film] without my prior written approval including festival showings- If distributors or other interested parties contact you about [the Film] please explain that you are the minority partner in the [F]ilm and you have no authority to make business decisions and refer them to me directly."

27.   Busby responded with an insulting and dismissive email, requesting immediate payment in contravention of the Consulting Agreement and promising that he would "move ahead on all fronts to show this fine film and to recoup [his] investment of time and expertise."

28.   On January 9, 2010, Arbini sent Busby another email outlining RCF's requests—that Busby return the Hard Drive and all Film materials and cease engaging in efforts to distribute the Film or show it at festivals. Once again, he invited Busby to identify a neutral third party to help resolve their disputes, but

Busby refused to suggest one. On January 14, 2010, Busby sent Arbini a text message saying "Just about finished. It's a great film. Unbelievable support. I'll get your money back. And yes you'll be involved."

### Busby's Latest Threats and Unstable Behavior

29. On January 27, 2010, Arbini was contacted by a distribution company requesting a copy of the Film. Since he did not have a copy of the Film (because Busby refused to turn any over), Arbini contacted Busby to again request a copy. Busby replied via email requesting either an entirely new contract, or up to $150,000 in cash, in order to move forward.

30. On February 11, 2010, Busby informed Arbini that the Film was completed, that he had taken on partners in the film (without RCF's knowledge or authority), that the Film had been shown in various film festivals, that a promotional poster for the Film was complete, and that he had ordered DVD prints of the Film and expected to receive them soon. He also told Arbini that he had proposed "new terms" for his engagement on the Film.

31. Later that day (February 11), Busby called Arbini again. On this call, Busby was rambling and delusional, and his statements made Arbini fear for his safety and that of his family. Busby claimed to Arbini that, for the past year, including during their last trip to Africa, Busby had been working as an agent for the United States government. He claimed that he was ordered by the government to do the acts he committed during the trip to Africa, including "faking" a Xanax overdose. He claimed that he was ordered to stop filming on the Kony project, to burn the cameras and tapes, and to "stop the mission at all costs." He warned Arbini, as an "agent of the government," to not discuss any details of the Kony project, the Film, or their trips to Africa with anyone, as they were "matters of national security." Arbini asked Busby which branch or department of the government he was working for, and Busby replied that it was "classified." He stated that Arbini and his family were being monitored at all times, as were all

Arbini's communications. He also stated that Arbini was "ordered" to never contact their host and guide in Kenya again. This conversation understandably made Arbini fearful for his and his family's safety.

32. At the end of this conversation, Busby offered to send Arbini a copy of the completed Film, along with his new proposed contract terms. Busby claimed that he could not discuss many things with Arbini because they were "confidential" and that he would not disclose these things unless and until RCF signed a new agreement with him regarding the Film.

33. The next day, February 12, 2010, Busby emailed Arbini his proposed new terms for a new agreement regarding the Film. His cover email to Arbini warned that "[t]his is between you and I but the army that stands behind me is endless." Busby's proposed new terms included a $30,000 payment and 40% of the Film's gross profits. The proposal concluded with the statement "March you do not want to miss." This statement can only mean that Busby intends to distribute or otherwise exploit the Film in March 2010 by attempting to license or otherwise transfer it to distributors and exhibit it in festivals, and that RCF must accede to his new terms if it hopes to share in this exploitation of RCF's work. This is a clear indication of Busby's cavalier disregard for the Consulting Agreement and for RCF's copyright in the Film.

34. On February 14, 2010, Busby delivered a copy of the Film and a promotional poster for the Film to the guard at the front gate of the Arbinis' housing development in Valencia, California. Shocked that Busby had come to their home, and fearful for their safety, the Arbini's were forced to spend that night in a hotel.

35. On February 16, 2010, Busby emailed Arbini a link to a film festival that the Film has been entered in. He also wrote that he had received the DVD prints of the Film.

36. On February 24, 2010, Busby emailed Arbini again, writing "Our film is now surround sound. Finished and paid for it today. I'm takin in ALL THE

1 | WAY Tony. Better get on the train. Lot's [sic] goin on." Busby's unauthorized
2 | distribution of the Film is clearly imminent.

### The Arbinis Seek a Harassment Injunction Against Busby in Los Angeles County Superior Court

37. Based on Busby's threats to the Arbini family, they sought an injunction in Los Angeles Superior Court on February 24, 2010 enjoining Busby from harassing them and commanding him to stay 100 yards away from them at all times. The Court denied the TRO application but set a hearing on a permanent injunction for March 26, 2010.

### FIRST CAUSE OF ACTION
(Copyright Infringement)

38. Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-37 of this Complaint as though fully set forth herein.

39. Pursuant to the terms of Consulting Agreement, Plaintiff is the sole author and copyright owner of the Film as a "work made for hire." 17 U.S.C. §§ 101 and 201(b). Plaintiff filed a registration for copyright in the Film with the United States Copyright Office on February 23, 2010.

40. Defendants are copying, distributing, exploiting, and attempting to copy, distribute, and exploit Plaintiff's copyrighted work without Plaintiff's consent or authorization. Defendants' actions as alleged herein infringe and will continue to infringe Plaintiff's copyright in the Film.

41. As a result of Defendants' copyright infringement as alleged above, Plaintiff has suffered and will continue to suffer injury and damage in an amount to be determined at trial. Further, Plaintiff is informed and believes, and based thereon allege, that Defendants have received or will receive profits, gains, or other benefits from their infringing activities, all of which should be disgorged to Plaintiff. Alternatively, Plaintiff reserves the right to seek statutory damages for Defendants' intentional infringement of its copyrighted work.

42. Defendants' copyright infringement has caused and will continue to cause irreparable harm to Plaintiff which cannot be fully compensated by monetary damages. Plaintiff has no adequate remedy at law. Plaintiff is therefore entitled to preliminary and permanent injunctive relief preventing Defendants from continuing to infringe Plaintiff's copyrighted work.

## SECOND CAUSE OF ACTION

(Unfair Competition and Unfair Business Practices)

43. Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-42 of this Complaint as though fully set forth herein.

44. Defendants have committed unlawful, unfair, and deceptive acts, and have engaged in unfair competition and unfair business practices, in violation of California Business and Professions Code §§ 17200 *et seq*. Plaintiff is informed and believes, and based thereon alleges, that Defendants, in doing the things herein alleged, have misled or substantially confused the public that they are the owners of the copyright in the Film.

45. Unless and until enjoined and restrained by Order of this Court, Defendants' continued actions will cause Plaintiff irreparable injury which cannot adequately be compensated by money damages. By reason of the foregoing, Plaintiff is entitled to a temporary restraining order and preliminary and permanent injunction prohibiting Defendants from distributing or exploiting the Film.

## THIRD CAUSE OF ACTION

(Specific Recovery of Personal Property)

46. Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-45 of this Complaint as though fully set forth herein.

47. Plaintiff is the owner of certain personal property that Defendants obtained through transmittal from Plaintiff. Plaintiff has a right to possess such property.

48. The property in Defendants' possession includes the Film, any and all versions of the Film, any and all footage shot in connection with the Film, any and all other material related to the Film, and the Hard Drive (collectively, the "Property").

49. Plaintiff is informed and believes, and based thereon alleges, that Defendants know that the Property contains and/or embodies Plaintiff's copyrighted work.

50. Plaintiff has demanded the return of the Property. Defendants have refused to return the Property.

51. Defendants' continued possession of the Property is wrongful in that the only value in the Property to Defendants lies in the illegal exploitation of Plaintiff's copyrighted work.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

### AS TO THE FIRST CAUSE OF ACTION

1. For a temporary restraining order and preliminary and permanent injunction prohibiting Defendants and all those working for or in conjunction with each of them from directly or indirectly causing or permitting the reproduction, public display, public distribution, or copying of the Film;

2. For compensatory damages in an amount according to proof;

3. For an award of Defendants' ill-gotten profits, gains, or other benefits from their infringing activities;

4. For an award of statutory damages in accordance with 17 U.S.C. § 504.

## AS TO THE SECOND CAUSE OF ACTION

5. For a temporary restraining order and preliminary and permanent injunction prohibiting Defendants and all those working for or in conjunction with each of them from directly or indirectly causing or permitting the public display, dissemination, distribution, exploitation, or sale of the Film; and

6. For an award of Defendants' ill-gotten profits, gains, or other benefits from their distribution and/or exploitation of the Film.

## AS TO THE THIRD CAUSE OF ACTION

7. For the permanent return to Plaintiff of its personal property presently under the custody and control of Defendants, including but not limited to the Film, any and all versions of the Film, any and all footage shot in connection with the Film, and the Hard Drive.

DATED: March 1, 2010

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP

By: _____
Lawrence Y. Iser
Attorneys for Plaintiff Roller Coaster Films, LLC

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all causes of action triable by jury.

DATED: March 1, 2010

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP

By: _____
Lawrence Y. Iser
Attorneys for Plaintiff Roller Coaster Films, LLC

99911.00003/50529.1

14
COMPLAINT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Consuelo B. Marshall and the assigned discovery Magistrate Judge is Paul Abrams.

The case number on all documents filed with the Court should read as follows:

**CV10- 1508 CBM (PLAx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [_] Southern Division | [_] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)    NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

ORIGINAL

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROLLER COASTER FILMS, LLC, a California limited liability company, <br><br> PLAINTIFF(S) <br> v. <br><br> DOUGLAS BUSBY, an individual; and DAMASCUS FILMS, an unknown entity; <br><br> DEFENDANT(S). | CASE NUMBER <br><br> CV 10-01508 DSF (PLAx) <br><br><br> SUMMONS |

TO: DEFENDANT(S): DOUGLAS BUSBY, an individual; and DAMASCUS FILMS, an unknown entity

A lawsuit has been filed against you.

Within __24__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [x] complaint [ ] _____ amended complaint [ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Lawrence Y. Iser and Chad R. Fitzgerald_, whose address is _808 Wilshire Blvd., Third Floor, Santa Monica, California 90401_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: 03-02-2010   By: _____
                          Deputy Clerk

(Seal of the Court)

[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].

---

CV-01A (12/07)                                SUMMONS                                        CCD-1A

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Roller Coaster Films, LLC

**DEFENDANTS**
Douglas Busby; Damascus Films

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Lawrence Y. Iser
Kinsella Weitzman Iser Kump & Aldisert
808 Wilshire Blvd.
Third Floor
Santa Monica, CA 90401
310-566-9800

**Attorneys (If Known)**
Unknown

**II. BASIS OF JURISDICTION** (Place an X in one box only.)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify):
- ☐ 6 Multi-District Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Copyright Infringement (17 U.S.C. §§ 101 et seq.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☒ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV10 1508

**FOR OFFICE USE ONLY:** Case Number: _____
AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No  [ ] Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No  [ ] Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)
[ ] A. Arise from the same or closely related transactions, happenings, or events; or
[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or
[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or
[ ] D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)
(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
[ ] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
[ ] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date March 1, 2010
Lawrence Y. Iser

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |